UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT FESTERMAN,

     Plaintiff,

                                         Case No. 13-11874

v.                                      Honorable Laurie J. Michelson
                                         Magistrate Judge R. Steven Whalen

COUNTY OF WAYNE,
A Michigan Charter County,

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]

     This is a Family and Medical Leave Act case in which Plaintiff Robert Festerman, a former Wayne County Jail Division police officer, asserts that Defendant Wayne County interfered with his ability to take leave for an anxiety disorder, and discriminated against him based on that disorder. This matter is before the Court on Defendant's motion for summary judgment (Dkt. 16), and Plaintiff's motion for summary judgment (Dkt. 18). These cross motions for summary judgment require the Court to examine two FMLA issues. First, interference and retaliation claims both contain a knowledge element, and both claims fail if the employee cannot demonstrate that the employer had notice or knowledge that he was attempting to exercise his FMLA rights. Thus, the Court addresses the standard for proper notice that an employee is requesting FMLA leave. Second, Plaintiff's retaliation claim requires that the Court examine the standard for constructive discharge.

Having reviewed the parties' motions and responses, the Court finds that oral argument will not aid in resolving the pending motions. *See* E.D. Mich. LR 7.1(f)(2). Because Plaintiff has not presented sufficient evidence to establish a prima facie case of either interference or retaliation, and has not presented specific facts demonstrating a genuine issue for trial, the Court grants Defendant's motion for summary judgment and thus, denies Plaintiff's motion.

## I.   FACTUAL BACKGROUND

Because each side has moved for summary judgment, where there are factual disputes, the Court presents each side's account.

Plaintiff was hired in October 2007 under the classification "Police Officer" to provide inmate security in Defendant's Jail Division Two, one of three jail facilities in Wayne County. (Dkt. 18-7, Position Desc., at 26.) Plaintiff's FMLA claims arise from Defendant's practice of ordering mandatory overtime. During Plaintiff's tenure, his department was "understaffed," and, "[a]s a result, involuntary overtime [wa]s a regular occurrence; deputies d[id] not have the right to refuse overtime." (Dkt. 16-7, Findings of Fact in Cty. of Wayne, Case No. D12 C-0189 (Mich. Emp't Relations Comm'n Oct. 16, 2013), at 18.)[1] Defendant ordered mandatory overtime based on a hierarchical list. First, the shift supervisor would ask officers listed on the voluntary "overtime request sheet." (Dkt. 16-5, Collective Bargaining Agreement, at 43–44.) After exhausting the volunteer list, the supervisor would rotate through the remaining officers beginning with the officer with the least seniority. (*See* Dkt. 16-15, Jackie Loving Dep., at 14–16.)

If an officer refused to report for mandatory overtime, his or her supervisor would issue a Conduct Incident Report ("CIR"). (Dkt. 16-9, Scott Gatti Dep., at 10–12.) A CIR is "essentially a

---

[1] Defendants cite to the facts section of this opinion in their brief in support of their motion for summary judgment. Only the facts section is included in the record.

memo" that details any incident of misconduct or refusal to follow a direct order. (*Id.* at 10.) During Plaintiff's employment, Defendant followed a "zero tolerance policy," and officers receiving CIRs would likely be "sent over to the discipline duty chief for a hearing . . . [subject to] flexibilities for the realities" of the sheer number of officers being ordered onto overtime shifts. (*Id.* at 12.)

Plaintiff alleges that this mandatory overtime practice and the related administrative measures came into conflict with his medical need to limit his working hours. At 4:00 p.m. on March 3, 2012, Plaintiff reported to Sergeant Becky Tripp that he was experiencing "intermittent chest pain" accompanied by "shortness of breath." (Dkt. 18-2, Incident Report of Mar. 3, 2012.) Plaintiff left work to go to the emergency room and was admitted to the hospital for an overnight stay. (Dkt. 18-3, Injury Report of Mar. 3, 2012.) Upon returning to work on March 8, he submitted documentation of the incident itself and received confirmation that the Personnel Office had received it. (Dkt. 18-4, Notice of Receipt.) On March 9, Plaintiff's doctor advised him in writing to "limit working hours to 8 [hours per] day." (Dkt. 18-5, Doctor's Orders and Prescription.) Plaintiff also began taking anxiety medication at this time. (Dkt. 16-3, Robert Festerman Dep., at 132.) Plaintiff asserts that he submitted the doctor's note to a supervisor, Sergeant Jackie Loving, on March 12, 2012. (Dkt. 16-19, Pl.'s CIRs and Rebuttals, at 9.) Sergeant Loving, however, avers that Plaintiff did not deliver the note to her, and that even if Plaintiff had given her the note, she would not have had authority to act on it. (Dkt. 16-15, Jackie Loving Dep., at 25.) Whether Plaintiff gave Loving the note or not, both parties agree that for approximately one month, Defendant accommodated Plaintiff's working hours restriction on an informal basis. (Dkt. 18, Pl.'s Br., at 3, ¶ 10; Def.'s Br., Dkt. 16, at 7.)

By March 28, 2012, Commander Scott Gatti became aware of Plaintiff's general need for medical accommodation. (Dkt. 16-9, Scott Gatti Dep., at 19.) That same day, the Personnel Office decided that even officers with doctor's notes limiting their working hours would be ordered onto overtime shifts, issued CIRs if they refused to report to an overtime shift, asked to explain their refusal, and required to "submit documentation." (Dkt. 16-18, Command Directive, at 1.) Supervising officers announced this policy change during roll call on at least two occasions: March 29 and April 4, 2012. (Dkt. 16-3, Festerman Dep., at 167–69.)

On April 6, 2012, Sergeant Dwight Reed issued a CIR to Plaintiff for his refusal to work an overtime shift, while acknowledging that Plaintiff had stated that "he ha[d] medical documentation that states he can not work more than eight hours." (Dkt. 18-8, CIR of Apr. 6, 2012.) In a rebuttal Plaintiff filed to protest this CIR, he asserted that he had submitted his doctor's note to a supervisor. (Dkt. 16-19, Pl.'s CIRs and Rebuttals, at 9.)

On April 8, 2012, Loving issued Plaintiff another CIR without any comment on Plaintiff's medical condition. (*Id.* at 588.) Plaintiff again filed a rebuttal, this time stating that he had refused to work the shift because he had a scheduled vacation day, and was following his doctor's orders. (*Id.* at 590.)

The next day, April 9, Plaintiff discussed his medical condition with two Human Resources employees: Debra Blair, Director of Labor Relations, and Shirley Prieskorn, Disabilities Manager. The two advised Plaintiff that he should fill out a leave of absence request form to be approved for leave under FMLA or the Americans with Disabilities Act ("ADA"). (Dkt. 16-3, Festerman Dep., at 196.) Plaintiff avers that he inquired whether his submission of his doctor's note on March 12 "fulfilled [his] obligation request putting my employer on notice about my medical need," and that Prieskorn told him that it did. (Dkt. 16-3, Festerman Dep., at

4

197.) He also acknowledges, however, that neither Prieskorn nor Blair was aware of his medical condition until the April 9 conversation. (*Id.*) Plaintiff spoke to Prieskorn and Mary Sullivan, Leave Coordinator, on April 12, 2012, regarding "the FMLA and ADA." (*Id.* at 198.) The next day, Plaintiff received "an ADA packet and [a] leave of absence packet" in the mail. (*Id.*)

On April 10, 2012, while Plaintiff was on a scheduled leave day, Commander Scott Gatti issued a recommendation that Plaintiff be referred to an Administrative Review and Determination Hearing "to be held accountable for his refusal to follow a direct order." (Dkt. 18-12, Disc. Action Mem.)

That same day, April 10, Plaintiff received a text message from a coworker informing him that "[s]omebody wore a T-shirt to work today that says 'I refuse. I have a note from my mom.'" (Dkt. 16-3, Festerman Dep., at 203.) After conferring with other coworkers who had similar medical restrictions, Plaintiff joined the group for a meeting with Sergeant Loving and two union stewards. (*Id.* at 211.) The group alleged that the t-shirt was discriminatory. Shortly thereafter, the Defendant initiated an investigation into the incident and designated Sergeant Becky Tripp as the lead investigator. (Dkt. 16-17, Becky Tripp Dep., at 27.) Plaintiff filed an internal complaint regarding the incident on June 11, 2012, noting that he felt he had been "harassed" during the course of the investigation. (Dkt. 16-24, Pl.'s Internal Compl., at 204.)

In support of his FMLA interference claim, Plaintiff points out that Defendant revised its position description for police officers on April 26, 2012. (Dkt. 18-18, Revised Position Desc.) In addition to the original position requirements, Defendant added two "essential job functions" to the position: (1) a requirement that police officers "be physically and mentally able to work a minimum of 40.5 hours per work week," a change from the original 40 hours; and (2) a

5

requirement that police officers "be physically and mentally able to work mandatory overtime." (*Id.* at 56.)

On May 3, 2012, Plaintiff turned in his completed leave of absence request form. (Dkt. 16-2, Pl.'s FMLA Packet, at 56.) Four days later, Defendant informed Plaintiff that he had been designated and approved for intermittent sick leave under FMLA from April 26, 2012, to October 26, 2012, subject to final approval from the Human Resources Department. (Dkt. 16-21, FMLA Designation Notice.) Mary Sullivan, however, requested further clarification of the medical certificate that Plaintiff had provided due to her confusion about Plaintiff's actual restrictions and concerns that his restrictions would "mean that he could not work full-time any longer . . . [and] how [Plaintiff's need for intermittent leave days] would relate to the 6 to 8 hours [restriction]." (Dkt. 16-23, Mary Sullivan Dep., at 44.)

Plaintiff submitted his resignation, "effective immediately," on June 20, 2012, and Defendant's records reflect his resignation as effective on June 21, 2012. (Dkt. 16-25, Pl.'s Written Resignation; Dkt. 16-10, Roster.) Shortly thereafter, Sullivan received a response from Plaintiff's doctor as to her clarification request, but because Plaintiff had resigned at that point, she made a final decision to deny his FMLA request. (Dkt. 16-22, Clarification Request, Dkt. 16-2, Pl.'s Completed FMLA Packet, at 57.)

## II. PROCEDURAL HISTORY

Plaintiff filed this suit on April 25, 2013. (Dkt. 1, Compl.) Plaintiff alleges that Defendant violated FMLA by interfering with his exercise of FMLA rights and by retaliating against him for exercising those rights. More specifically, in count one of the Complaint, Plaintiff alleges that Defendant violated 29 U.S.C. § 2615(a)(1) by "fail[ing], neglect[ing], and/or refus[ing] to provide a designation notice to Plaintiff pursuant to FMLA and 29 C.F.R. § 825.300(d)." (Dkt. 1,

Compl., at 5, ¶ 25.) In his motion for summary judgment, Plaintiff additionally alleges that Defendant failed to provide him an FMLA eligibility notice within five days of his leave request pursuant to 29 C.F.R. § 825.300. (Dkt. 18, Pl.'s Br., at 12.)

In count two of the Complaint, Plaintiff alleges that Defendant violated 29 U.S.C. § 2615(a)(2) because Defendant's failure to provide a designation notice "subjected Plaintiff to additional and/or continued denigration by his superiors and co-workers, as well as additional retaliation and verbal and written discipline." (Dkt. 1, Compl., at 5, ¶ 29.) As a result, says Plaintiff, he was left "no alternative other than to resign his position, which constituted a constructive discharge. . . . Plaintiff's constructive discharge was in retaliation for exercising his rights under the FMLA." (Dkt. 1, Compl., at 6, ¶ 31.)

On March 28, 2014, Defendant moved for summary judgment on both claims. (Dkt. 16.) Plaintiff filed a cross motion for summary judgment on both claims on March 31, 2014. (Dkt. 18.)

III. ANALYSIS

A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451–52 (citing *Anderson*, 477 U.S. at 248). In evaluating a motion for summary judgment, this Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering the parties' cross-motions, this Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). Further, "[t]he filing of cross motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." *Beck*, 390 F.3d at 917. Instead, the Court must evaluate whether either party has carried its respective burden to succeed on its motion.

If the moving party bears the burden of persuasion at trial, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quotation omitted). If the moving party does not bear the burden of persuasion at trial, it may discharge its initial burden either by "submit[ing] affirmative evidence that negates an essential element of the nonmoving party's claim. . . . [or] by demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If this burden is met, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

### B. The Family and Medical Leave Act

The Family and Medical Leave Act entitles employees covered by the Act to take up to twelve weeks of unpaid leave per year for certain personal situations, including "a serious health condition that makes the employee unable to perform the functions of such employee." 29 U.S.C.

8

2612(a)(1). Employees taking leave for a serious health condition may take leave "intermittently or on a reduced leave schedule." 29 U.S.C. 2612(b)(1).

The Sixth Circuit "recognizes two distinct theories for recovery under FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004). Under the entitlement/interference theory, an employer violates FMLA where it "interfere[s with], restrain[s], or den[ies] the exercise or the attempt to exercise any right provided" by the Act. 29 U.S.C. § 2615(a)(1). By contrast, under the retaliation/discrimination theory, an employer violates FMLA where it "discharge[s] or in any other manner discriminate[s] against any individual for opposing any practice made unlawful" by the Act or for exercising his or her rights under the Act. 29 U.S.C. § 2615(a)(2). As noted, Plaintiff asserts both interference and retaliation claims. (Dkt. 1, Compl., at 4–8.)

Courts in this Circuit analyze interference and retaliation claims under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–806 (1971). Therefore, "a successfully pleaded prima facie case, either for FMLA interference or retaliation, would shift the burden to [defendant] to present a legitimate, nondiscriminatory reason for its decision." *Donald*, 667 F.3d at 761. *See also Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (applying a burden shifting standard to an FMLA interference claim). Under this standard, neither interference nor retaliation "constitutes a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Grace*, 521 F.3d at 670 (quoting *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006)).

A plaintiff can refute such a demonstration, however, "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace*, 521 F.3d at 670 (citing *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003)).

### C. Defendant Wayne County's Motion for Summary Judgment

In its motion, Defendant asserts that "Plaintiff cannot establish a prima facie case of FMLA interference" and that "Plaintiff fails to prove a prima facie case of constructive/retaliatory discharge." (Dkt. 16 Def.'s Br., at 16, 20.) Plaintiff bears the burden of persuasion on both of these claims at trial. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). In evaluating Defendant's motion, this Court will view the evidence, and any reasonable inferences drawn from it, in the light most favorable to Plaintiff.

### 1. FMLA Interference Claim

To establish a prima facie case of interference, Plaintiff must demonstrate that:

> (1) [Plaintiff] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [his] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [he] was entitled.

*Donald*, 667 F.3d at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). "An employer may violate 29 U.S.C. § 2615(a)(1) regardless of the intent behind its conduct." *Hoge*, 384 F.3d at 244. FMLA is not a strict liability statute, however, and "[e]mployees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006).

10

"The term 'eligible employee' means an employee who has been employed: (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2). It is undisputed that Plaintiff was employed by Defendant for a period of approximately forty-eight months starting in October 2007. Dkt. 16-10 at 1. Further, based on Plaintiff's forty-hour work week and assuming a fifty-week work year, he would have worked a total of 2,000 hours during the year preceding his initial hospitalization. The Court finds that Plaintiff has presented sufficient evidence to demonstrate that he met FMLA's standard for "eligible employee" during the time period in question.

Neither Plaintiff nor Defendant disputes Defendant's status as an FMLA-covered employer. *See* 29 U.S.C. § 2611(4) (providing that FMLA-covered employers include "any person engaged in commerce . . .  who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.")

The third factor in the prima facie case is the employee's entitlement to take leave. In this case, Plaintiff's entitlement to take leave would ostensibly be based on FMLA's "serious health condition" provision. 29 U.S.C. 2612(a)(1). A serious health condition is "defined as an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care . . . or continuing treatment by a health care provider." *Edgar*, 443 F.3d at 506 (quotation marks omitted). Plaintiff alleges that he suffered from an anxiety disorder that involved prescription medication and continued medical care to diagnose and treat the condition. (Dkt. 16-3, Festerman Dep., at 132.)

Under current Department of Labor regulations, the term "serious health condition" includes conditions causing a "period of incapacity for more than three consecutive, full calendar

11

days" and subsequent treatment involving "[t]reatment by a health care provider on at least one occasion," resulting in a "regimen of continuing treatment" such as a prescription. 29 C.F.R. 825.115(a). Construing the facts in the light most favorable to Plaintiff, the Court assumes that Plaintiff did suffer from an anxiety disorder, missed work from March 3 to March 8 due to the disorder, was seeing a physician, and had obtained a prescription for anti-anxiety medication. The Court finds that for the purpose of Defendant's motion for summary judgment, Plaintiff has presented sufficient evidence that he suffered from a serious health condition as defined under 29 C.F.R. § 2612(a)(1) and related regulations.

Plaintiff's interference claim falters on the fourth element of a prima facie case. That element requires Plaintiff to show that he gave Defendant sufficient notice of his intent to take leave. Department of Labor regulations provide that "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. 825.302(b). Such notice must be given "as soon as practicable," if not thirty days before the leave will commence. 29 C.F.R. 825.302(a). "An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. 825.302(d). "Because an employee need not expressly invoke the FMLA, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Byron v. St. Mary's Med. Ctr.*, No. 11-13445, 2012 U.S. Dist. LEXIS 129058, at \*16–17 (E.D. Mich. Sept. 11, 2012) (quotation marks omitted). Notably, Defendant conveyed all of these requirements to Plaintiff in a handout in October 2007, when Plaintiff first began work. (*See* Dkt. 27-1, Wayne Cty. New Empl. Orientation Participation Form.)

12

Plaintiff contends that sufficient notice was provided on March 12, 2012, when he submitted a doctor's note to shift supervisor Sergeant Loving. (Pl.'s Resp. Br., Dkt. 20, at 2). Defendant claims that sufficient notice did not occur until May 3, 2012, when Plaintiff submitted his formal leave of absence request. (Def.'s Br., Dkt. 16 at 16.)   The Court agrees with Defendant.

First, the content of the March 12 doctor's note is insufficient to qualify as FMLA notice to Defendant. In particular, the note contains no substantive indication of a serious medical condition. *See* 29 CFR 825.303(b) ("An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request.") In all, the note reads: "Robert is advised to limit working hours to 8 hrs/day." (Dkt. 18-5, Doctor's Orders.) Plaintiff did not testify that he verbally explained to Loving (or anyone else) that the restriction on the note stemmed from a serious medical condition. (*See* Dkt. 16-3, Festerman Dep., at 158–59.) While employees are not required to specifically mention FMLA when requesting a leave of absence, courts in the Sixth Circuit do require that the employee "provide the employer with some information about the medical condition at issue" in order to satisfy the notice requirement. *Booth v. Roadway Express, Inc.*, No. 03-660, 2005 U.S. Dist. LEXIS 38421, at *24 (S.D. Ohio 2005). While a doctor's note recommending limited working hours may indicate a "need" for leave, it does not indicate the "reason" for leave. *See Lawson-Brewster v. River Valley Sch. Dist.*, No. 06-58, 2008 U.S. Dist. LEXIS 33060, at *5 (W.D. Mich. 2008) (holding that a doctor's note advising plaintiff to remain off work for four days did not constitute sufficient notice of plaintiff's depression).

Some courts have found sufficient notice where an employee submits a doctor's note in close proximity to a health-related incident in the workplace. For example, in *Conrad v. Eaton*

13

*Corp.*, 303 F. Supp. 2d 987 (N.D. Iowa 2004), the day the employee was sent home from work for threatening behavior, he submitted a note from his treating psychiatrist stating, "No work until further notice!" The employer also had knowledge of the employee's behavioral issues and essentially admitted that it understood the employee to be eligible for FMLA leave in a letter sent shortly after the incident. *Conrad*, 303 F. Supp. 2d at 992, 998. In combination, these facts constituted adequate notice of the employee's mental illness and need for FMLA leave. *Id.*

Here, Plaintiff had no history of taking leave due to anxiety attacks; instead, his most recent request for leave at the time of the incident was due to his school schedule. (Dkt. 16-11, Pl.'s Request for Overtime Exemption of Jan. 7, 2012, at 1.) Furthermore, Plaintiff's initial report did not mention anxiety disorder or indicate any ongoing medical condition; instead it reported "sharp stabbing chest pains." (Dkt. 18-3, Injury Report.) Therefore, even construing the facts in the light most favorable to Plaintiff, the March 12 event cannot constitute sufficient notice of Plaintiff's need for FMLA-qualifying leave.

Plaintiff's April 9 conversation with Human Resources does not suffer from the same deficiency as the doctor's note. During that conversation, at least when reasonable inferences are drawn in Plaintiff's favor, Plaintiff adequately informed Defendant of a "serious health condition." The problem with basing an interference claim off of this date, however, is that Plaintiff's notice only triggered Defendant's duty to provide him with "eligibility" notice—not an FMLA "designation." And there is no dispute that Defendant did provide Plaintiff with an eligibility notice within five days of the April 9 meeting. (Dkt. 16-2, FMLA Packet.) This was all that was due Plaintiff at that point. *See* 29 CFR 825.300(b)(1). The designation was not owed to Plaintiff until he submitted his paperwork on May 3. 29 CFR 825.300(d) ("When the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying

14

reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances."); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013).

Additionally, the March 12 doctor's note and April 9 conversation did not comply with Defendant's internal requirements for providing notice. Prior to 2009, the Sixth Circuit did not allow employers to "deny FMLA relief for failure to comply with their internal notice requirements." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003). As of 2009, however, "the regulatory language underlying this holding in *Cavin* is no longer in effect." *Srouder*, 725 F.3d at 614. The amended regulation provides that "[w]here an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.302(d). The Sixth Circuit recently held that due to these "material alterations," the regulation now "explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances." *Srouder*, 725 F.3d at 614. Therefore, Plaintiff's interference claim fails if (absent unusual circumstances) he did not comply with Defendant's notice requirements. *Id.* at 615. This is so "regardless of whether [Plaintiff] provided sufficient FMLA notice." *Id.*

Plaintiff acknowledged in his deposition that on April 9, Prieskorn advised him of Defendant's "usual . . . procedural requirements for requesting leave," namely, a written leave of absence request. (Dkt. 16-3, Festerman Dep., at 197.) It is undisputed that Plaintiff did not submit a written leave-of-absence request until May 3, 2012, when he submitted his completed paperwork. (Festerman Dep., at 197–99.) Further, Plaintiff has cited no evidence of unusual

circumstances that would excuse his delay in submitting the required paperwork. *See* 29 C.F.R. § 302(d) (providing examples of unusual circumstances, including "no one to answer the call-in number [to request leave] and the voice mail box is full"). Thus, Defendant did not have the requisite notice until May 3, 2012.

In short, the doctor's note submitted to Loving on March 12 did not convey a serious medical need so it does not, as a matter of law, constitute the required notice for a FMLA interference claim. On April 9, Plaintiff may have conveyed a serious medical need such that he gave the requisite notice, but Defendant did not then interfere with Plaintiff's rights under FMLA: it provided him the packet of materials for eligibility within five days. Thus, the earliest possible notice date for purposes of an interference claim is May 3, 2012, when Plaintiff fulfilled both the FMLA notice and Defendant's customary leave notice requirements.

But, after May 3, 2012, Defendant did not interfere with Plaintiff's FMLA benefits. The record indicates that Plaintiff's request for intermittent FMLA leave was approved by his department on May 7, 2012, subject to final approval by Central Personnel. (Dkt. 16-21, FMLA Designation.) This designation falls within the five-day time frame prescribed in FMLA regulations. 29 CFR 825.300(d). Plaintiff does not present evidence that he was ordered onto an overtime shift, or issued any attendance-related CIRs, after May 3.

Plaintiff claims that Sullivan's clarification request after he submitted his paperwork was an interference with his FMLA entitlements. Defendant, however, was well within its FMLA rights to request clarification of Plaintiff's medical certification. *See* 29 C.F.R. 825.305(c) ("The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient.")

Plaintiff next asserts that the revised position statement of April 26 constituted FMLA interference after May 3 because it added an extra half hour to the required work week and required that employees be able to work mandatory overtime, and because Commander Gatti testified that there was a "no light duty policy" in place. (Dkt. 20, Pl.'s Resp. Br., at 6–7, ¶ 30, 33.) These assertions fail to create a genuine dispute, however, because Plaintiff was granted intermittent FMLA leave after the policies were put into place; in fact, his FMLA leave was retroactive to the date of the policy change. (Dkt. 16-21, FMLA Designation.) This indicates that regardless of the increased hours and "no light duty policy," Plaintiff would have been able to continue following his doctor's orders by taking FMLA leave.

Finally, Plaintiff continues to assert interference based on the fact that he "was still awaiting disposition" of the CIRs and hearing referral after May 3. (*E.g.* Dkt. 28, Pl.'s Reply Br., at 3.) In support of this argument, Plaintiff cites *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412 (6th Cir. 2004). In that case, the employee had diabetes and asserted that "defendant unlawfully interfered with the exercise of his FMLA rights by counting various absences that he alleges to have been FMLA-qualifying under its 'no-fault' attendance policy and by subsequently terminating plaintiff pursuant to that policy." *Id.* at 426. The court granted summary judgment to the employer, however, because the employee, "as a matter of law, failed to give defendant notice." *Id.* at 429. The same logic applies here, and furthermore, Plaintiff "quit" before the hearing was resolved and before any negative action, such as being terminated, could occur. (Dkt. 28, Pl.'s Reply Br., at 6.) In fact, there is no evidence in the record that indicates that a hearing ever took place, nor is there evidence that the pending administrative action had any effect on his employment status.

17

Plaintiff cannot establish a prima facie case of interference. His claim that he was denied FMLA benefits, therefore, cannot be sustained.

### 2.    FMLA Retaliation Claim

To establish a prima facie case of FMLA retaliation, Plaintiff must demonstrate that:

> (1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald*, 667 F.3d at 761 (quoting *Killian*, 454 F.3d at 556). Adverse action in employment-based retaliation claims is determined with reference to the Title VII retaliation standard announced in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006); *Jordon v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006). The adverse action element requires that a plaintiff "show that a reasonable employee would have found the challenged action materially adverse." *Burlington N.*, 548 U.S. at 68.

The Sixth Circuit joins the Second, Third, Fourth, Fifth, Seventh, and Tenth Circuits in utilizing the *Burlington Northern* standard in the FMLA anti-retaliation context. *Crawford v. JP Morgan Chase & Co.*, 531 F. App'x 622, 627 (6th Cir. 2013) ("We join our sister circuits in concluding that *Burlington* applies to retaliation claims under the FMLA."); *see also Murphy v. Ohio State Univ.*, 549 F. App'x 315, 321 (6th Cir. 2013). "For purposes of the FMLA's anti-retaliation provision, a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *O'Sullivan v. Siemens Indus., Inc.*, No. 11-11832, 2012 U.S. Dist. LEXIS 136163, at *23 (E.D. Mich. Sept. 24, 2012) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 164 (2d Cir. 2011)).

Plaintiff's adverse employment action is based on his alleged "constructive discharge" from employment, (Dkt. 1, Compl., at 6, ¶ 31–32), a claim on which he bears the burden of persuasion at trial. *See LaPointe v. UAW Local 600*, 103 F.3d 485, 488 (6th Cir. 1996). To meet this burden, Plaintiff "must adduce evidence to show that (1) the employer . . . deliberately create[d] intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee . . . actually quit." *Savage v. Gee*, 665 F.3d 732, 736 (6th Cir. 2012) (citation and internal quotations omitted). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999).

It is undisputed that Plaintiff was exercising or attempting to exercise his rights under FMLA at some point during the time period in question by requesting leave for his anxiety disorder. (Dkt. 16, Def.'s Br., at 20; Dkt. 20, Pl.'s Resp. Br., at 16.) Therefore, Plaintiff must show that Defendant knew that he was exercising his FMLA rights. Indeed, "without knowledge of the protected activity, there can be no inference that the adverse action was taken because of the protected activity." *Smith v. Aco*, *Inc.*, 368 F. Supp. 2d 721, 732 (E.D. Mich. 2005). Again, Plaintiff asserts that he put Defendant on notice that he was requesting FMLA leave on March 12, 2012, by submitting his doctor's note to Loving. But, as explained, the note did not provide enough information for Defendant to conclude that Plaintiff sought leave for a FMLA-qualifying condition. Also as explained above, Defendant could not have known that Plaintiff was attempting to exercise rights under FMLA until, at earliest, April 9, 2012, when Plaintiff discussed his condition with Human Resources Personnel.

19

Plaintiff alleges that he suffered the following adverse employment actions: (1) CIRs issued in response to his refusals to work overtime, (2) a referral to an administrative hearing, and (3) constructive discharge due to harassment by his coworkers. (Dkt. 20, Pl.'s Resp. Br., at 17.) Plaintiff asserts that "[t]hese actions and campaigns to humiliate Plaintiff immediately followed, and were effectively coextensive with, Plaintiff's exercise of his FMLA rights." (Dkt. 20, Pl.'s Resp. Br., at 18.)

The only two CIRs available in the record were issued before April 9, 2012. Therefore, even if they were adverse employment actions, there can be no causal connection between Defendant's knowledge and these acts.

Plaintiff next asserts that he was constructively discharged based on general harassment by coworkers about his medical status and, in particular, the April 10 incident wherein a coworker wore an insulting t-shirt allegedly referring to Plaintiff's doctor's orders, as well as the ensuing investigation. (Pl.'s Resp. Br., Dkt. 20, at 17.) A constructive discharge, if proven, would constitute a "materially adverse" action. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001). While it is undisputed that Plaintiff tendered his resignation on June 20, 2012, his evidence is insufficient to meet the other elements of the constructive discharge standard.

The Court first turns to an objective assessment of whether "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Smith v. Henderson*, 376 F.3d 529, 533–34 (6th Cir. 2004). The Sixth Circuit has directed that "[w]hether a reasonable person would have [felt] compelled to resign depends on the facts of each case," however, there are a few factors that are "relevant, singly or in combination." *Regan v. Faurecia Auto Seating, Inc.*, 679 F.3d 475, 482 (6th Cir. 2013)

20

(quoting *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005)).

These factors include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Saroli*, 405 F.3d at 739.

A co-worker wearing a t-shirt that says, "I refuse. I have a note from my mom" is not enough to create an "intolerable working environment" for the purpose of establishing a constructive discharge. First, this was a single, isolated incident. Additionally, there is nothing in the record to support that this incident was directed at Plaintiff as opposed to the three other employees who refused overtime due to medical restrictions. Indeed, Plaintiff's deposition testimony indicates that he was on leave the day the t-shirt was worn. Plaintiff fails to adduce any other specific incidents of harassment, whether by coworkers or by his superiors.

The Sixth Circuit has noted that "hurt feelings" and "general suspicions" about the motivations of superiors and coworkers cannot give rise to a finding of an objectively intolerable work environment. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 479 (6th Cir. 2002) (affirming the district court's grant of the employer's motion for summary judgment because the employee's "suspicion and conjecture" that there was a systematic plot to eliminate older employees without any objective evidence of such a plot could not give rise to constructive discharge). A reasonable officer, especially one accustomed to providing security for inmates at a state jail facility, would not feel compelled to resign based on a t-shirt poking fun at employees who refused mandatory overtime.

21

Moreover, Plaintiff fails to demonstrate that Defendant intended the incident to cause him to resign. *See Moore*, 171 F.3d at 1080 ("Intent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions.") In harassment-based claims, "the court may consider whether it was reasonably foreseeable that the harassment and the employer's handling of it would cause the employee to resign." *Fernandez*, 2006 U.S. Dist. LEXIS 82136 at *54 (citing *Moore*, 171 F. 3d at 1080). True, Sergeant Loving did not discipline the officer who wore the t-shirt or ask him to take it off. But she indicated that she did not view the t-shirt as overly offensive because there were many officers, not just those with medical notes, refusing overtime. (Dkt. 16-15, Loving Dep., at 44–51.) Her testimony also indicates that the officer in question had a t-shirt business and often wore irreverent t-shirts to work before changing into his uniform in hope of attracting new customers. (*Id.* at 44.) Finally, Loving indicated that the t-shirt "was absolutely nothing compared to the way I hear [the officers] talk to each other, and they like each other." (*Id.* at 48.) It appears that from the employer's perspective, this sort of joke among coworkers was not meant to be overly offensive and was instead par for the course among the officers. Thus, Plaintiff has not shown that it was reasonably foreseeable to Defendant that the t-shirt incident would cause a reasonable officer to resign.

Plaintiff also alleges that Defendant's institutional response to the t-shirt incident contributed to his constructive discharge. *See West v. Tyson Foods*, 374 F. App'x 624, 636 (6th Cir. 2010) ("Whether an action, or lack thereof, by the employer manifests an 'attitude of permissiveness' is relevant to whether an employer failed to take prompt and appropriate corrective action leading up to the constructive discharge and therefore is liable for constructive discharge.") It is undisputed that Defendant initiated an investigation into the t-shirt, but Plaintiff claims that Sergeant Becky Tripp harassed him by "interrogat[ing]" him about his refusal to

work overtime as part of the investigation and by telling a different officer: "You are the reason this has become a big deal." (Dkt. 20, Pl.'s Resp. Br., at 17.) As noted above, Defendant had reason to believe that the incident was nothing out of the ordinary, and Sergeant Tripp in fact completed the investigation and submitted her findings to a Lieutenant. Plaintiff points to no evidence that Defendant intended any of its actions in response to the t-shirt incident to force him to resign.

Plaintiff's claim that his referral to an administrative hearing gave rise to constructive discharge is also without merit. "Any reasonable person employed as a police officer with a police department, where discipline is essential to effective operation of the department, would understand that strict enforcement of the rules is part and parcel of the job." *Fernandez v. City of Pataskala*, No. 05-75, 2006 U.S. Dist. LEXIS 82136, at *61–62. (S.D. Ohio Nov. 9, 2006). Defendant has demonstrated that administrative hearings and CIRs were typical forms of administrative action that applied to all employees unless they had completed the formal leave request process. Whether or not these events can be characterized as discipline, Plaintiff cannot show that a reasonable officer would find them to create an intolerable work environment, and he cannot show that Defendant intended these events to compel him to resign.

Lastly, to the extent Plaintiff somehow believes that Sullivan's request for Plaintiff to clarify his medical certification constituted harassment giving rise to a constructive discharge, the claim cannot stand. Employers are well within their rights under FMLA to request clarification from an employee's treating physician in order to ascertain the meaning of "vague" responses in medical certifications. 29 C.F.R. 825.305(c). Sullivan's request falls squarely within the regulation because she sought clarification of vague statements regarding Plaintiff's hourly restrictions. Such a request cannot give rise to a reasonable belief that the employer was

23

deliberately attempting to force the employee to resign, nor could it create a foreseeable risk that an employee would resign.

In short, whether taken together or considered separately, Plaintiff has not established that Defendant committed an adverse employment action after it had knowledge that Plaintiff was asserting his FMLA-related rights on April 9, 2012. Rather, it appears that Defendant took a customary administrative action (Administrative Hearing referral), exercised its rights under FMLA and its related regulations (clarification request), and investigated what reasonably appeared to be a fairly common instance of teasing by corrections officers (t-shirt incident). Plaintiff's retaliation claim therefore fails as a matter of law.

### D.  Plaintiff Robert Festerman's Motion for Summary Judgment

Because Plaintiff cannot meet his burden as the nonmoving party in Defendant's motion for summary judgment, the Court finds that he also cannot meet the higher burden he faces in his own motion for summary judgment. *See Brenneman*, 366 F.3d at 430 (affirming the district court's decision not to expressly rule on plaintiff's motion for summary judgment where "in granting defendant's motion for summary judgment, the district court expressly found that all of plaintiff's claims *failed* as a matter of law [and] [t]hus . . . implicitly found that plaintiff's FMLA claim could not *succeed* as a matter of law") (emphasis in original).

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**. Plaintiff's motion for summary judgment is **DENIED**.

It is further ordered that the hearing previously scheduled for September 10, 2014 is

**CANCELLED.**

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  June 24, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on June 24, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

25